**NOT FOR PUBLICATION**

```
                    UNITED STATES DISTRICT COURT
                    FOR THE DISTRICT OF NEW JERSEY
```

| | | |
|---|---|---|
| KELVIN McLEAN, | : | |
| | : | Civil Action |
| Plaintiff, | : | 06-4132 (WJM) |
| | : | |
| v. | : | **O P I N I O N** |
| | : | |
| BALIN BAIDWAN, Esq. Et al, | : | |
| | : | |
| Defendants. | : | |

**APPEARANCES:**

    KEVIN McLEAN, Plaintiff <u>pro se</u>
    #30066
    Passaic County Jail
    Paterson, NJ 07501

**WILLIAM J. MARTINI, United States District Judge**

Plaintiff KELVIN McLEAN[1] (hereinafter "Plaintiff") currently confined at Passaic County Jail, Paterson, New Jersey, seeks to bring this 42 U.S.C. § 1983 action <u>in forma pauperis</u> without prepayment of fees pursuant to 28 U.S.C. § 1915. Plaintiff submitted his affidavit of indigence and institutional account statement pursuant to 28 U.S.C. § 1915(a) (1998). Plaintiff also

---

[1] Since Plaintiff's Complaint is hand-written, and Plaintiff's penmanship is not easy to comprehend, transcriptions of Plaintiff's name and the names of defendants in this action may contain minor spelling errors.

submitted for filing his complaint (hereinafter "Complaint"). Plaintiff's Complaint names the following parties as defendants in this action: Balin Baidwan, Esq., Assistant Deputy Public Defender; John B. Dwyer, Esq., Deputy Public Defender; D. Albritton-Dundick, Esq., Team Leader, Office of the Prosecutor; and Walter R. Dewey, Jr., Esq., Assistant Prosecutor. See Compl. §§ 4, 6. Plaintiff asserts that: (a) Defendant Baidwan violated Plaintiff's Sixth Amendment constitutional rights by failing to file a timely motion to suppress certain evidence and by failing to properly investigate other evidence, see id. §§ 4(b) and 6(1); (b) Defendant Dwyer violated Plaintiff's Sixth Amendment constitutional rights by responding to Plaintiff's allegations against Defendant Baidwan with a statement that Plaintiff's allegations against Baidwan were without merit and appeared to be based on Plaintiff's racial bias against Baidwan, see id. §§ 4(c)and 6(2); (c) Defendant Dewey violated Plaintiff's Fourth, Sixth, and Fourteenth Amendments constitutional rights by "admitting a forensic laboratory certificate . . . in front [Plaintiff's] Grand Jury [and, thus, causing Plaintiff's] indictment," see id. §§ 6(3) and p. 8; and (d) Defendant Albritton-Dundick violated Plaintiff's Fourth, Sixth, and Fourteenth Amendments constitutional rights by being involved in the same actions as Defendant Dewey. See id. §§ 6(4) and p. 9.

   Plaintiff now seeks "relief of indictment [and] dismiss[al] of all charges," plus compensatory and punitive damages. See id. § 7.

**DISCUSSION**

**A.   Standard of Review**

In 1996, Congress enacted the Prison Litigation Reform Act ("PLRA"), Title VIII of the Omnibus Consolidated Rescissions and Appropriations Act of 1996, Pub. L. No. 104-134, 110 Stat. 1321 (April 26, 1996).  Congress's purpose in enacting the PLRA was "primarily to curtail claims brought by prisoners under 42 U.S.C. § 1983 and the Federal Tort Claims Act . . . many of which are routinely dismissed as legally frivolous."  Santana v. United States, 98 F.3d 752, 755 (3d Cir. 1996).  A crucial part of the congressional plan for curtailing meritless prisoner suits is the requirement, embodied in 28 U.S.C. §§ 1915(e)(2)(B) and 1915A(b), that a court must dismiss, at the earliest practicable time, any prisoner actions that are frivolous or malicious, fail to state a claim, or seek monetary relief from immune defendants.  However, in determining the sufficiency of a complaint, the Court must be mindful to construe it liberally in favor of the plaintiff.  See Haines v. Kerner, 404 U.S. 519 (1972); United States v. Day, 969 F.2d 39, 42 (3d Cir. 1992).  The Court should "accept as true all of the allegations in the complaint and reasonable inferences that can be drawn therefrom, and view them in the light most favorable to the plaintiff."  Morse v. Lower Merion School Dist., 132 F.3d 902, 906 (3d Cir. 1997).  The Court need not, however, lend credit to a pro se plaintiff's "bald assertions" or "legal conclusions."

Id.  Thus, "[a] pro se complaint may be dismissed for failure to state a claim only if it appears 'beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'"  Milhouse v. Carlson, 652 F.2d 371, 373 (3d Cir. 1981) (quoting Haines v. Kerner, 404 U.S. 519, 520 (1972)).

**B.   Color of Law Requirement**

Plaintiff's claims against Defendant Baidwan and Dwyer are not viable under § 1983 since these claims fail to meet the color of law requirement.

To recover against a defendant under 42 U.S.C. § 1983, a plaintiff must establish that the defendant acted under "color of [state] law" to deprive him of a right secured by the federal Constitution or laws.[2]  See Groman v. Twp. of Manalapan, 47 F.3d 628, 633 (3d Cir. 1995).  Section 1983 does not create substantive rights; rather, it provides an avenue of recovery for the

---

[2]

Section 1983 provides in relevant part that:

Every person who, under color of any statute, ordinance, regulation, custom, or usage, or any State . . . subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

deprivation of established federal constitutional and statutory rights. See Kneipp v. Tedder, 95 F.3d 1199, 1204 (3d Cir. 1996); Groman, 47 F.3d at 633.

"The color of state law . . . is a threshold issue; there is no liability under [Section] 1983 for those not acting under color of law." Id. at 638.  The color of state law element in a section 1983 action requires that "the conduct allegedly causing the deprivation of [the plaintiff's rights] be fairly attributable to the State." Lugar v. Edmonson Oil Co., 457 U.S. 922, 937 (1982). For the conduct to be "fairly attributable" to the State, (1) the deprivation must be caused by (a) the exercise of some right or privilege created by the State or (b) by a rule of conduct imposed by it or by a person for whom the State is responsible, and (2) the defendant must be a person who may fairly be said to be a state actor, either because the person (a) is a state official, (b) acted together with or has obtained significant aid from state officials, or (c) performed conduct otherwise chargeable to the State. See id. at 936-39.

The United States Supreme Court has articulated several instances where a private party's actions may be fairly attributed to state action, including when: (1) it results from the State's exercise of "coercive power"; (2) the State provides significant encouragement, either overt or covert; (3) a private actor operates as a willful participant in joint activity with the State or its

agents; (4) a nominally private entity is controlled by an agency of the State; (5) a private entity has been delegated a public function by the State; or (6) the private entity is entwined with governmental policies, or the government is entwined in its management or control.  See Brentwood Acad. v. Tenn. Secondary Sch. Ath. Ass'n, 531 U.S. 288, 296 (2001) (internal quotations and citations omitted).  The Court, in deciding whether a particular action or course of action by a private party is governmental in character, must examine: (1) the extent to which the actor relies on governmental assistance and benefits; (2) whether the actor is performing a traditional public function; and (3) whether the injury caused is aggravated in a unique way by the incidents of governmental authority.  See Edmonson v. Leesville Concrete Co., 500 U.S. 614, 621 (1991).

It is well-settled that neither a privately retained counsel nor a court-appointed public defender who performs a lawyer's traditional function as counsel to a defendant in a criminal proceeding could be deemed as acting under color of law. See Polk County v. Dodson, 454 U.S. 312, 325 (1981).  Whether court-appointed or privately retained, a defense attorney represents only her client and not the state.  See Johnson v. Kafrissen, 1995 U.S. Dist. LEXIS 8072, at *2 (E.D. Pa. June 5, 1995).  The only exception lies if a defense counsel conspires with the prosecution.  However, for a conspiracy claim, there must be

evidence of (1) an actual violation of a right protected under § 1983, and (2) actions taken in concert by defendants with the specific intent to violate that right.  See Williams v. Fedor, 69 F. Supp.2d 649, 665-66 (M.D.Pa.), aff'd, 211 F.3d 1263 (3d Cir. 2000) (citing Kerr v. Lyford, 171 F.3d 330, 340 (5th Cir. 1999)); see also Parkway Garage, Inc. v. City of Phila., 5 F.3d 685, 700 (3d Cir. 1993) (plaintiff must show that two or more conspirators reached an agreement to deprive him or her of a constitutional right under color of law); Kelley v. Myler, 149 F.3d 641, 648-49 (7th Cir. 1998) (an agreement or an understanding to deprive the plaintiff of constitutional rights must exist).

Since Plaintiff's Complaint is silent as to any conspiracy between Defendants Baidwan and Dwyer and the prosecutors, Plaintiff's claims against Defendants Baidwan and Dwyer should be dismissed for failure to state a claim upon which relief may be granted.

**C.   Absolute Immunity**

Plaintiff's claims against Defendants Dewey and Albritton-Dundick are similarly not viable under § 1983 in view of prosecutorial immunity of these Defendants.  In determining whether a prosecutor is entitled to absolute immunity, the law is clear:

> [A]cts undertaken by a prosecutor in preparing for the initiation of judicial proceedings or for trial, and which occur in the course of his role as an advocate for the State, are entitled to the protections of absolute immunity.

Kalina v. Fletcher, 522 U.S. 118 (1997) (quoting Buckley v. Fitzsimmons, 509 U.S. 259, 273 (1993)). Only when a prosecutor engages in activities which are distinct from his role as an advocate for the State, absolute immunity is not available. Id. Conversely, "absolute prosecutorial immunity attaches when actions are performed in a 'quasi-judicial role,' such as participation in court proceedings and other conduct intimately associated with the judicial phases of litigation." Carter v. City of Philadelphia, 181 F.3d 339, 356 (3d Cir. 1999) (citing Giuffre v. Bissell, 31 F.3d 1241, 1251 (3d Cir. 1994)). Thus, prosecutors are absolutely immune from suit under § 1983 for initiating and pursuing a criminal prosecution. See Imbler v. Pachtman, 424 U.S. 409, 430-31 (1976).

Since, in the case at bar, the presentation of forensic report to Plaintiff's Grand Jury was an act performed by Defendants Dewey and Albritton-Dundick in their "quasi-judicial roles," Petitioner's claims against these Defendants are barred by the Defendants' absolute immunity and, therefore, should be dismissed for failure to state a claim upon which relief may be granted.

**D.    Abstention Doctrine**

Moreover, even if Plaintiff's claims were not barred by the color of law requirement or by absolute immunity, Plaintiff's claims are barred by the abstention doctrine.

The doctrine of abstention which has developed since Younger v. Harris, 401 U.S. 37, "espouse[s] a strong federal policy against federal-court interference with pending state judicial proceedings absent extraordinary circumstances."  Middlesex County Ethics Committee v. Garden State Bar Ass'n, 457 U.S. 423, 431 (1982). "Younger abstention," as the Court's teaching is known, "is premised on the notion of comity, a principle of deference and 'proper respect' for state governmental functions in our federal system." Evans v. Court of Common Pleas, Delaware County, Pa., 959 F.2d 1227, 1234 (3d Cir. 1992), cert. dismissed, 506 U.S. 1089 (1993).  Comity concerns are especially heightened when the ongoing state governmental function is a criminal proceeding.  See id.

The specific elements of the Younger abstention are that "(1) there are ongoing state proceedings that are judicial in nature; (2) the state proceedings implicate important state interests; and (3) the state proceedings afford an adequate opportunity to raise federal claims."  Schall v. Joyce, 885 F.2d 101, 106 (3d Cir. 1989).  All three Younger criteria are met in the case at hand. First, Plaintiff's claim concerns the separate pending criminal case.  Second, based upon the fact that Plaintiff is attempting to

raise issues concerning the validity of his indictment and pre-trial incarceration, the proceeding clearly implicates important state interests. Third, the State forum affords Plaintiff an adequate opportunity to raise his federal law issues, such as his key claim about inadmissibility of a forensic report.[3]

Exceptions to the <u>Younger</u> doctrine exist only where irreparable injury is "both great and immediate," <u>Younger</u>, 401 U.S. at 46, where the state law is "flagrantly and patently violative of express constitutional prohibitions," <u>id.</u> at 53, or where there is a showing of "bad faith, harassment, or . . . other unusual circumstances that would call for equitable relief." <u>Id.</u> at 54. These exceptions are to be narrowly construed. <u>See</u> <u>Loftus v. Township of Lawrence Park</u>, 764 F. Supp. 354, 357 (W.D. Pa. 1991). Thus, "only in cases of proven harassment or prosecutions undertaken by state officials in bad faith without hope of obtaining a valid conviction . . . is federal injunctive relief against state prosecutions appropriate." <u>Perez v. Ledesma</u>, 401 U.S. 82, 85 (1971). Plaintiff has not asserted any circumstances that would bring the case at bar within any of the narrow exceptions to the <u>Younger</u> doctrine.

---

[3] Plaintiff has not asserted that he is unable to present his federal claims in his related state court proceedings. Thus, this Court may assume that the state procedures will afford an adequate remedy. <u>See</u> <u>Kelm v. Hyatt</u>, 44 F.3d 415, 420 (6th Cir. 1995) (citing <u>Pennzoil Co. v. Texaco, Inc.</u>, 481 U.S. 1, 17 (1987)) ("Initially, we must presume that the state courts are able to protect the interests of the federal plaintiff.")

Moreover, Plaintiff has requested injunctive relief that would clearly interfere with the pending state court criminal proceeding. Dismissal of such a claim for relief is plainly warranted. Furthermore, Plaintiff also seeks to recover monetary relief in the form of compensatory and punitive damages. The Court of Appeals for the Third Circuit has recognized that claims for damages which would imply the invalidity of a conviction on pending criminal charges are not cognizable. See Smith v. Holtz, 87 F.3d 108, 113 (3d Cir.1996). As the Holtz Court made clear:

> [Section] 1983 actions are subject to the "hoary principle" that civil tort actions are not the appropriate vehicle for challenging the validity of convictions and sentences. The express objectives of this holding were to preserve consistency and finality, and to prevent "a collateral attack on [a] conviction through the vehicle of a civil suit." . . . We find that these concerns apply equally to claims that, if successful, would necessarily imply the invalidity of a future conviction on a pending criminal charge. A claim by a defendant in an ongoing criminal prosecution which necessarily challenges the legality of a future conviction on pending criminal charge lies at the intersection of the federal habeas corpus statute and the Civil Rights Act of 1871. If such a claim could proceed while criminal proceedings are ongoing, there would be a potential for inconsistent determinations in the civil and criminal cases and the criminal defendant would be able to collaterally attack the prosecution in a civil suit.

Holtz, 87 F.3d at 113 (emphasis removed).

Thus, dismissal of claims for monetary relief under federal causes of action, which necessarily depend on the outcome of the ongoing criminal cases, is both warranted and mandatory in view of

the Third Circuit's pronouncement.  Moreover, the Court in <u>Guerro v. Mulhearn</u>, 498 F.2d 1249, 1254 (1st Cir. 1974), also squarely addressed the issue of abstention where there exists an ongoing state criminal proceeding, stating:

> In any event, whatever cost to the litigant may be involved, there is an overriding cost that is avoided. Damage to the smooth operation of the administration of criminal justice, injury to the proper workings of a federal system, and undermining of congressional concern with the functioning of the writ of habeas corpus-all are harms which are prevented by the requirement that a civil rights damage action be deferred.

It would be indeed an improper interference with the pending state criminal court proceeding if this Court were to either grant Plaintiff injunctive relief or to award Plaintiff damages based upon his claim of constitutional rights violations. The adjudication of Plaintiff's constitutional claims in this instant civil right action would require this Court to rule upon issues relevant to the disposition of the state criminal charges, thereby impermissibly interfering in the pending state criminal proceeding. As explained in <u>Clark v. Zimmerman</u>, 394 F. Supp. 1166, 1174 (M.D. Pa. 1975):

> To allow state criminal defendants to litigate their constitutional claims in civil rights suits for money damages before completion of the state criminal process would invite a flanking movement against the system of state courts by resort to the federal courts to litigate constitutional defenses in civil rights damage actions, thereby subverting the orderly functioning of the state criminal process.  Such suits would introduce an element of uncertainty in state criminal proceedings and would expose every state criminal justice system to insupportable disruption.

Accordingly, Plaintiff's claims should be dismissed. The application of the Younger doctrine of federal non-intrusion in the state criminal process, along with the principle that constitutional issues relevant to the disposition of pending state criminal charges cannot be adjudicated in a federal civil rights damage action, necessitates dismissal of Plaintiff's claim.

**CONCLUSION**

Based on the foregoing, the Court grants Plaintiff's application to file the Complaint without prepayment of the filing fee and dismisses the Complaint without prejudice. An appropriate Order accompanies this Opinion.

s/William J. Martini

**WILLIAM J. MARTINI**
**United States District Judge**

Dated: 9/15/06